IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

```
IN RE:                              )
                                    )
BARBARA RUTH MAN                    )      Case No. 09-51791
                                    )
              Debtor.               )      Chapter 7
_____)
```

**MEMORANDUM OPINION**

This matter came before the Court on February 17, 2010 upon the Trustee's Objection to Debtor's Property Exemptions (the "Objection"), filed by Edwin H. Ferguson, Jr., the duly-appointed Chapter 7 trustee in this case (the "Trustee"), on November 13, 2009. At the hearing, Esten H. Goldsmith appeared on behalf of the above-referenced debtor (the "Debtor") and Mr. Ferguson appeared in his capacity as the Trustee. The Objection presents a matter of first impression: whether a condominium may be properly exempted as a health aid pursuant to N.C. Gen. Stat. § 1C-1602(a)(7). After consideration of the Objection, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Court will allow a portion of the Condominium to be exempted as a health aid and sustain the Objection in part.

**I. JURISDICTION**

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), which this Court has the jurisdiction to hear and determine.

## II. FACTS AND PROCEDURAL POSTURE

In the late 1990s, the Debtor began to suffer from apparent allergies. Several years later, she was diagnosed with a neuro-toxic illness with direction from her physician to live in a chemical free "safe environment." In 2005, her illness was so severe that she could no longer work. In 2006, the Debtor was diagnosed with toxic encephalopathy. She tolerates no chemical cleaners, scented products, perfumes, or dyes and has to use a water purifier. The Debtor currently suffers from bipolar affective disorder, generalized anxiety, fibromyalgia, toxic encephalopathy, and multiple chemical sensitivity syndrome (environmental illness). She testified that she underwent a "bio-detoxification" program and "allergy desensitization" therapy with a physician named Dr. Allan D. Lieberman. After consulting with three doctors, the determined treatment was avoidance of environmental irritants such as mold, perfumes, petrochemicals, cleaning products, and pesticides. The Debtor has received Social Security disability since January of 2008. The recommended treatment of the Debtor's condition is to create a chemical free environment.

The Debtor purchased a condominium located at 1919 Meadowlark Lane #58, Charlotte, North Carolina (the "Condominium") in August of 2008 for $29,000. She testified that when she purchased the Condominium, she intended to fix it into a "safe home" that would accommodate her illness. A doctor was not involved in the purchase or selection of the Condominium, nor did the Debtor receive a written prescription from a doctor. Rather, the Debtor testified that she selected the Condominium because it had good cross-ventilation, it was located on the top of a hill, it was an end unit, and it was on the ground floor. These characteristics were selected by the Debtor to limit her contact with harmful environmental influences, such as detergent runoff,

cleaning agents, and other chemicals to which she might react. She also had mold and radon tests performed prior to moving into the Condominium, which she did in April of 2009.

The Debtor testified that her selection of the Condominium was based on information that she received from Dr. Lieberman at an environmental health clinic, including a pamphlet on how to keep her home environmentally safe, and from a book that the Debtor purchased. The Debtor testified that the doctor prescribed a "mold-free home." She testified that she called environmental consultants to advise her in the process of creating her safe home, such as what type of paint to use on inside surfaces.

The Debtor also testified that she made improvements to the Condominium to comply with what her doctors recommended. The Debtor bought a new heat pump that cost $2,700. She removed the rug from the floor to reduce dust. She replaced the flooring with ceramic tiling, using low-VOC grouting and tiling products. She replaced the kitchen counter and cabinets, which were moldy and had water damage, with a used stainless steel table. A sink was welded to the stainless steel table, which was welded to the plumbing. She replaced the moldy refrigerator. She purchased replacement windows to replace moldy, rotted windows. She purchased new grills for the heating vents because the old ones were rusty. She put wire shelving in the closets. The Debtor testified that all of the above improvements were made to accommodate her environmental illness.

The Debtor testified that she expended $14,441.57 for these modifications. However, her invoices, which were entered into evidence, itemized her modifications as follows:

```
$   794.50  -  plumbing repair
    214.50  -  stainless steel table
    820.00  -  install sink in stainless steel table
  1,411.58  -  heat pump and air handler
```

```
   400.00  -  heat and air labor
   307.95  -  air duct cleaning
   607.81  -  ceramic tile
 1,800.00  -  ceramic tile installation
   557.08  -  low-VOC tiling materials
   500.00  -  carpet removal, cleaning
   825.43  -  paint and painting equipment
   100.28  -  equipment rental
   577.50  -  baseboard installation, painting, finishing, door installation
   323.17  -  wire shelving
 1,677.00  -  replacement windows
   119.95  -  radon detector
   100.00  -  shelving labor
   285.00  -  radon testing
   412.82  -  refrigerator
 1,104.55  -  miscellaneous expenses
$12,939.12
```

On August 31, 2009, the Debtor filed her Chapter 7 bankruptcy. On Schedule A, she listed the Condominium, which she valued at $36,100. Schedule A also states, "Debtor has severe environmental sensitivities and current residence has been specially prescribed by debtor's physician." Attached to Schedule A is a letter from Neal Speight, MD, which describes the Debtor's medical condition and states that the Debtor "had to make a number of changes to be able to live" in the Condominium. The letter goes on to describe the changes that the Debtor made to the Condominium and states: "These upgrades were expensive, but medically necessary."

Among her exemptions, the Debtor claimed, pursuant to N.C. Gen. Stat. § 1C-1602(a)(1), a $18,500 homestead exemption in the Condominium. Curiously, the Debtor did not exempt any property as a professionally prescribed health aid. On November 13, 2009, the Trustee filed the Objection to the Debtor's homestead exemption.[1] Since the Condominium was valued at

---

[1] The Court extended the time for the Trustee to object to exemptions to January 2, 2010.

$36,100, and the homestead exemption was only $18,500, the Trustee objected to the Debtor retaining any value in the Condominium over $18,500.  The hearing on the Objection was scheduled for December 2, 2009, but was continued to December 16, 2009 at the request of the parties.

On December 3, 2009, the Debtor filed a Brief in response to the Trustee's Objection. The Brief asserted that the equity in the Condominium is exempt because "the Condominium itself is a 'health aid.'"  On December 4, 2009, the Debtor received her Chapter 7 discharge.  At 10:32 a.m. on December 16, 2009, just minutes before the hearing on the Objection, the Debtor amended her exemptions by claiming that the $17,600 of equity in the Condominium is exempt as a health aid pursuant to N.C. Gen. Stat. § 1C-1602(a)(7).  The Debtor continued to claim her homestead exemption of $18,500.  At the December 16 hearing, the Debtor revealed that she had just amended her exemptions, and the Trustee requested an opportunity to review the amended exemptions.  The Court understood that the Trustee objected to the amended exemptions, specifically the exemption of the Condominium as a health aid.  The hearing on the Objection was continued to January 20, 2010.  On that date, the hearing was continued to February 17, 2010, again at the parties' request.  At the final hearing on February 17, 2010, the matter was taken under advisement.

### III. PROCEDURAL ISSUES

#### A.  May the Debtor Amend Her Exemptions Post-Discharge?

The Trustee questions whether the Debtor should be allowed to amend her exemptions after her discharge has been entered.  Rule 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the

case is closed." Fed. R. Bankr. P. 1009(a). "Amendment of schedules by a debtor is liberally allowed pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed." In re Reardon, 403 B.R. 822, 829 (Bankr. D. Mont. 2009). See also In re LoCurto, 239 B.R. 314, 316 (Bankr. E.D.N.C. 1999) ("As a general rule, amendments are liberally allowed, and Rule 1009 contains no limitation of the debtor's right to amend."). However, there are two recognized exceptions to the general rule: prejudice and bad faith. See In re Yonikus, 996 F.2d 866, 872 (7th Cir. 1993) ("Exceptional circumstances may prevent a debtor from amending schedules. Amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties."); Stinson v. Williamson (In re Williamson), 804 F.2d 1355, 1358 (5th Cir. 1986) ("a court may deny leave to amend if there is a showing of the debtor's bad faith or of prejudice to the creditors"); Tignor v. Parkinson (In re Tignor), 729 F.2d 977, 978 (4th Cir. 1984) ("It is true that exceptional circumstances may prevent the debtor in bankruptcy from amending his petition or schedules . . . .") (citing In re Doan, 672 F.2d 831, 833 (11th Cir.1982), for the proposition that bad faith or prejudice to creditors may bar amendment); Snyder v. Rockland Trust Co. (In re Snyder), 279 B.R. 1, 6 (1st Cir. B.A.P. 2002) ("Case law, however, has established two clear exceptions to a debtor's right to amend his or her schedules, prejudice and bad faith.") (citing Osborn v. Durant Bank & Trust Co. (In re Osborn), 24 F.3d 1199, 1206 (10th Cir. 1994)); In re Scott, No. 00-10993, slip op. at 4 (Bankr. M.D.N.C. 2002) (2002 WL 1284281) ("Nevertheless, as recognized in Tignor, exceptional circumstances such as bad faith on the part of a debtor or prejudice to the trustee or creditors may prevent the debtor in bankruptcy from amending the petition or schedules.").

Courts have allowed debtors to amend their petitions post-discharge under Rule 1009(a).

See, e.g., Ryen v. Olmstead (In re Olmstead), 82 B.R. 197 (Bankr. W.D.N.Y. 1988) (allowing the debtor to amend her exemptions post-discharge, but sustaining the trustee's objection to the amended exemptions on substantive grounds). In re Green, 90 B.R. 560 (Bankr. S.D. Fla. 1988), is not to the contrary. In Green, the debtor had received her discharge, funds had already been distributed to creditors by the trustee, and the case was ready to be closed when the debtor sought to amend her schedules under Rule 1009(a) to add four additional creditors. Only "the purely ministerial task" of the clerk preparing the final decree remained before the case was to be closed. The court held that "[t]he debtor's motion comes too late to fall within the reasonable interpretation to be given B.R. 1009(a)." Id. at 561. The court also noted that "[n]o meaningful method is available at this stage in the completed administration of this case with distributed assets to extend the deadline for filing claims to avoid prejudice to the originally unlisted creditors." Id. (emphasis added). Thus, Green turns on prejudice to creditors rather than the simple fact that the attempted amendment was filed after the debtor's discharge.

Because the case is not closed, and the Trustee makes no allegation of prejudice or bad faith, the Debtor's post-discharge amendment of her exemptions is allowed.

### B. Did the Trustee Properly Object to the Amended Exemptions?

On November 13, 2009, the Trustee filed the Objection to the Debtor's exemptions. On December 16, 2009, just before the hearing on the Objection, the Debtor filed amended exemptions that claimed the equity in the Condominium to be exempt as a health aid pursuant to N.C. Gen. Stat. § 1C-1602(a)(7). At the December 16, 2009 hearing, the Trustee was not aware that the Debtor had, minutes before, amended her exemptions, and he expressed surprise. The attorney for the Debtor acknowledged, "It's my fault for filing at the last minute." The Trustee

expressed his opposition to the amended exemptions, but he never filed a written objection to the amended exemptions.

Rule 4003(b)(1) provides:

> Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.

Fed. R. Bankr. P. 4003(b)(1). In addition, Section 522(l) states that "[u]nless a party in interest objects, the property claimed as exempt . . . is exempt." 11 U.S.C. § 522(l). Under Rules 9014 and 4003(b), an objection to an exemption should be filed with the court. Fed. R. Bank. P. 9014(a) ("[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion . . ."); Fed. R. Bank. P. 4003(b) ("a party in interest may file an objection"); Bace v. Babitt, No. 07-2421, slip op. at 3 (S.D.N.Y. March 25, 2008) (2008 WL 800672) ("Given the filing requirement, an oral objection [to an exemption] like the one advanced at the February 7, 2007 Hearing was improperly raised and should not have been considered."); In re Quillen, 408 B.R. 601 (Bankr. D. Md. 2009) ("the word 'objects' [as used in § 522(l)] must mean a timely objection filed in accordance with Rule 4003(b)(1)"). Furthermore, Rule 4003(b) is strictly enforced. "Failure to file a timely objection to the debtor's exemptions is an absolute bar to consideration of the merit of the exemptions." Yonikus, 996 F.2d at 868; see Taylor v. Freeland & Kronz, 503 U.S. 638 (1992) (holding that a Chapter 7 trustee could not challenge the validity of a claimed property exemption after the 30-day objection period, even though the debtor had no colorable basis for the exemption).

In re Meyer, 211 B.R. 203 (Bankr. E.D. Va. 1997), involved a situation similar to the one before the Court. In Meyer, the trustee objected to the debtor's claim for exemptions. On the

day before the hearing, the debtor filed an amended claim for exemptions. The Meyer court stated:

> Because the amended schedules were filed so close in time to the hearing on the trustee's objection to the debtor's exemptions, the trustee did not have the opportunity to file an amended objection. However, the trustee did raise several arguments objecting to the debtor's amended claim of exemptions both orally at the hearing and in a supplemental response filed on June 18, 1997, after the hearing was concluded. The debtor, in his post-hearing memorandum, asked the court to deny the trustee's "mythical" objection. Under well-settled principles, a debtor is liberally permitted to amend his or her claim of exemptions in order to take advantage of available exemptions. This is precisely what the debtor is seeking to do. The debtor is arguing, in substance, that while he should have the unfettered right to amend his claim of exemptions, the trustee should be penalized for not formally objecting to a claimed exemption which the trustee learned about no earlier than 24 hours before the scheduled hearing. The court notes that under Fed. R. Bankr. P. 4003(b), the filing of amended schedules triggers a new 30 day period in which the trustee may object to the debtor's claim of exemptions. Since the trustee timely objected to the debtor's original claim of exemption, and since the items claimed exempt remain the same, the court, in order to promote judicial economy, will treat the trustee's original objection as also extending to the amended claim of exemptions.

211 B.R. at 206 n.1 (internal citations omitted). In these circumstances, it is only equitable[2] to treat the Objection as an objection to the Debtor's amended exemptions. The items that the Debtor claimed as exempt remained the same. The Debtor and the Trustee had been discussing the merits of the Debtor's amended exemption for weeks, after several continuances, and the Trustee had voiced his objection privately to the Debtor and in open court. No one could seriously argue, and the Debtor does not assert, that the Debtor has been prejudiced by the failure of the Trustee to file another written objection after the amended exemption was filed. The Court will follow the Meyer approach and conclude that the Trustee objected to the Debtor's amended exemptions.

---

[2] "The Bankruptcy Court is a court of equity." See, e.g., N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 527 (1984).

### C.  May the Debtor Apply More Than One Exemption to the Condominium?

The Trustee questions whether the Debtor may apply more than one of her exemptions to the Condominium, a practice sometimes known as "stacking."  In interpreting North Carolina law, a court begins by looking to the plain language of the statute itself.  Smith Chapel Baptist Church v. City of Durham, 517 S.E.2d 874, 878 (N.C. 1999).  "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning."  Lemons v. Old Hickory Council, BSA, 367 S.E.2d 655, 658 (N.C. 1988).  "Ordinary rules of grammar apply when ascertaining the meaning of a statute."  Dunn v. Pacific Employers Ins. Co., 418 S.E.2d 645, 648 (N.C. 1992).

The Debtor is attempting to use two exemptions on a single asset.  When the Debtor filed her bankruptcy, Section 1C-1601(a)(1) provided a homestead exemption up to the amount of $18,500, which the Debtor claimed in the Condominium.  Section 1C-1601(a)(7) states the debtor may exempt "[p]rofessionally prescribed health aids for the debtor," but the statute states no dollar limitation.  The Debtor exempted the remaining equity in the Condominium as a health aid.

Nothing in the language of N.C. Gen. Stat. § 1C-1601 prevents a debtor from using two different subsections to exempt different portions of the same property.  Neither Section 1C-1601(a)(1) nor 1C-1601(a)(2) provides that any excess value in property exempted under one subsection cannot also be claimed as exempt under another subsection.  The plain meaning of Section 1C-1601 allows a debtor to utilize multiple subsections to exempt different portions of the same property.

Moreover, the North Carolina Court of Appeals has allowed debtors to apply multiple

exemptions to a single asset.  In AVCO Financial Services v. Isbell, 312 S.E.2d 707, 708 (N.C. Ct. App. 1984), the debtor was allowed to exempt part of his interest in a van up to the limit provided by N.C. Gen. Stat. § 1C-1601(a)(3) and to use N.C. Gen. Stat. § 1C-1601(a)(2) to exempt his remaining interest.  The AVCO court stated: "We believe the limits contained in subsection (a)(3) apply only to exemptions claimed under that subsection and have no application to exemptions claimed under subsection (a)(2)."  Id.  See also In re Male, 362 B.R. 238 (Bankr. E.D.N.C. 2007) (noting, without comment, that the debtor had claimed different portions of a vehicle as exempt under N.C. Gen. Stat. § 1C-1601(a)(2) and (a)(3)); In re Fiero, No. 08-00287, slip op. at 2 (Bankr. E.D.N.C. May 12, 2008) (2008 WL 2045820) (same).  This combination of a vehicle exemption and a wildcard exemption is often used in cases before this Court, without objection.  The Court concludes that the stacking of North Carolina exemptions is proper.

## IV. ANALYSIS

Pursuant to Section 522(b) of the Bankruptcy Code, debtors may choose between the exemptions provided by federal law and those provided by state law, unless a state chooses to opt out of the federal exemption scheme.  11 U.S.C. § 522(b)(1).   North Carolina opted out. N.C. Gen. Stat. § 1C-1601(f) ("The exemptions provided in The Bankruptcy Code, 11 U.S.C. § 522(d), are not applicable to residents of this State."); In re Opperman, 943 F.2d 441 (4th Cir. 1991) ("11 U.S.C. § 522 also grants the states the right to opt out of the federal exemption scheme, and North Carolina has done so.").  Thus, North Carolina debtors must use the exemptions provided by North Carolina law.  In re Evans, No. 09-50450, slip op. at 2 (Bankr. M.D.N.C. Oct. 8, 2009) (2009 WL 3259427); In re Thompson, 313 B.R. 683, 685 (Bankr.

M.D.N.C. 2004).

The Trustee objects to the Debtor exempting the equity in the Condominium as a "professionally prescribed health aid." At issue before the Court is the interpretation and application of N.C. Gen. Stat. § 1C-1602(a)(7), which provides as follows:

> Exempt property. – Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors: . . . Professionally prescribed health aids for the debtor or a dependent of the debtor.

"Exemption statutes are to be interpreted liberally." In re Grubbs, 325 B.R. 151, 154 (Bankr. M.D.N.C. 2005). If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen. Elmwood v. Elmwood, 244 S.E.2d 668, 678 (N.C. 1978); Goodwin v. Claytor, 49 S.E. 173, 177 (N.C. 1904); Kinlaw v. Harris, 689 S.E.2d 428 (N.C. Ct. App. 2009). The purpose of the exemption provisions is to protect a debtor's fresh start after bankruptcy. U.S. v. Security Indus. Bank, 459 U.S. 70, 71 n.1 (1982) ("The exemptions were designed to permit individual debtors to retain exempt property so that they will be able to enjoy a 'fresh start' after bankruptcy."); In re Morehead, 283 F.3d 199, 206 (4th Cir. 2002) ("the bankruptcy exemptions are designed to help the debtor make a 'fresh start'").

A claimed exemption is "presumptively valid." 9 Collier on Bankruptcy, ¶ 4003.04 (15th ed. 2009). As the objecting party, the Trustee has the burden of proving that the Debtors' exemptions are not properly claimed. See Fed. R. Bankr. P. 4003(c); In re Sims, 421 B.R. 745, 749 (Bankr. D.S.C. 2010); In re Quillen, 408 B.R. 601, 614 n.23 (Bankr. D. Md. 2009). This

burden must be established by a preponderance of the evidence.[3] In re Sheeran, 369 B.R. 910, 918 (Bankr. E.D. Va. 2007); In re McCashen, 339 B.R. 907, 909 (Bankr. N.D. Ohio 2006).

The matter before the Court is a question of first impression. There does not appear to be a direct controlling precedent from the North Carolina Supreme Court or the Fourth Circuit Court of Appeals construing or applying N.C. Gen. Stat. § 1C-1602(a)(7). Some guidance is provided by courts that have been called upon to construe state health aid exemption statutes involving a variety of debtor property. See Reardon, 403 B.R. at 830 (van exempted as a "professionally prescribed health aid" under Montana law); In re Stanger, 385 B.R. 758 (Bankr. Idaho 2008) (health savings account not exempted as a "health aid reasonably necessary to enable the individual or a dependent to work or to sustain health" under Idaho law); McCashen, 339 B.R. at 913 (van not exempted as a "professionally prescribed or medically necessary health aid" under Ohio law); In re Allard, 342 B.R. 102 (Bankr. M.D. Fla. 2005) (van exempted as a "professionally prescribed health aid" under Florida law); In re Hellen, 329 B.R. 678 (Bankr. N.D. Ill. 2005) (van partially exempted as a "professionally prescribed health aid" under Illinois law); In re Kirby, 223 B.R. 825 (Bankr. M.D. Fla. 1998) (motor home not exempted as a "professionally prescribed health aid" under Florida law); In re Driscoll, 179 B.R. 664 (Bankr. D. Or. 1995) (Lexus automobile not exempted as a "professionally prescribed health aid" under

---

[3]While the Trustee retains the burden of proof throughout (it does not shift), once the objecting party produces evidence to rebut the claimed exemption, the burden of production shifts to the debtor "to come forward with unequivocal evidence to demonstrate that the exemption is proper." In re Carter, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (internal citations omitted). This burden-shifting approach has been adopted by numerous courts. See, e.g., In re Holt, 357 B.R. 917, 921 (Bankr. M.D. Ga. 2006); In re Peacock, 292 B.R. 593, 596 (Bankr. S.D. Ohio 2002); In re Davis, No. 99-00358, slip op. at 2 (Bankr. D.S.C. May 28, 1999) (1999 WL 33486078); In re Bennett, 192 B.R. 584, 586 n.9 (Bankr. D. Me. 1996); In re Hodgson, 167 B.R. 945, 950 (D. Kan. 1994).

Oregon law); In re Johnson, 101 B.R. 280 (Bankr. W.D. Okla. 1989) (water treatment system exempted as a "professionally prescribed health aid" under Oklahoma law).

At the outset, it is important to understand that the decision of this case necessarily involves value judgments that have already been made by the North Carolina legislature. As one court stated,

> There are strong, competing social values at issue here: the honest debtor's interest in a fresh start, which is facilitated by having transportation to obtain medical care, and the legitimate creditor's interest in receiving some or all of the amounts owed by the debtor, through the sale of the estate's non-exempt assets and a distribution of the proceeds to creditors. The responsibility for determining how to balance these interests lies in this case with the state legislature.

McCashen, 339 B.R. at 913 (holding that van is not exempt as a health aid under Ohio law).

### A. Is the Condominium a Health Aid?

To determine whether any given item is a health aid, it is first necessary to determine whether the debtor has a medical need and, if so, whether the item claimed as exempt is necessary or beneficial to the debtor in addressing that medical need. The Debtor has been diagnosed with toxic encephalopathy. The Court accepts the Debtor's uncontradicted testimony that it is medically necessary for her to live in a chemical free environment.

The Court found no cases that have interpreted the term "health aid" in N.C. Gen. Stat. § 1C-1602(a)(7). Two definitions have emerged in the case law. The Driscoll court concluded that a "health aid" is something that is uniquely suited and principally used for the diagnosis, cure, mitigation, treatment or prevention of disease or for the purpose of affecting any structure or function of the body. Driscoll, 179 B.R. at 666 (utilizing the definition for "medical care" contained in the Internal Revenue Code). See Reardon, 403 B.R. at 828; Allard, 342 B.R. at 103-104; Hellen, 329 B.R. at 684; Kirby, 223 B.R. at 830. The McCashen court determined that

14

a health aid is something useful to (1) help a debtor attain freedom from disease or pain or (2) support the debtor's physical or mental well being.  McCashen, 339 B.R. at 911; see Reardon, 403 B.R. at 829.  The Court finds that the Condominium meets both tests.  While a condominium normally is just a place to live, the Condominium is uniquely suited to minimize the symptoms of the Debtor's medical condition.  See Hellen, 329 B.R. at 684 (finding that a van was a "health aid" because it was used principally for the mitigation of DR's disability as well as for the treatment of that disability).  The Debtor uses the Condominium as a health aid and as a place to live, and it may not be possible or necessary to separate the two functions.  Id. at 683 (holding that property does not need to be principally designed, function, or is used solely as a health aid in order for the exemption to attach).  Living in the Condominium clearly helps the Debtor minimize the adverse effects of her medical condition.  The environment provided by the Condominium is part of the treatment necessary to sustain the Debtor's health.

### B.  Was the Condominium Professionally Prescribed?

A "professional" is "one that engages in a particular pursuit, study, or science for gain or livelihood . . . one with sufficient authority or practical experience in an are of knowledge or endeavor to resemble a professional."  Hellen, 329 B.R. at 682-83 (quoting Webster's Third New International Dictionary Unabridged 1811 (3d ed. 1981)).  The legislature intended to require "a person possessing skill or experience in a field to recommend or order the use of health aids."  Hellen, 329 B.R. at 683; Reardon, 403 B.R. at 827.  "Prescribe" means "to direct, designate, or order the use of a particular remedy, therapy, medicine, or drug."  Driscoll, 179 B.R. at 665 (quoting Black's Law Dictionary 1064 (5th ed. 1981)).  See also Hellen, 329 B.R. at 683 (stating that "prescribe" means "to direct, designate, or order the use of as a remedy") (quoting Webster's

15

Third New International Dictionary Unabridged 1792 (3d ed. 1981)).  The Hellen Court held that if a person possessing skill or experience in a field recommended or ordered the use of a health aid, then that rendered it "professionally prescribed."  Hellen, 329 B.R. at 683.  Although no doctor advised the Debtor where to live, the Condominium was modified at the recommendation of her doctors.  The Trustee argues that no prescription was ever written for the improvements to the Condominium, but the Driscoll and Hellen courts concluded that the term "professionally prescribed" does not require a written prescription from a medical doctor.  Driscoll, 179 B.R. at 827; Hellen, 329 B.R. at 683.  The North Carolina legislature clearly could have limited the health aid exemption to items subject to a written prescription from a medical doctor but chose not to do so, so the Court will not either.  The Court concludes that the improvements to the Condominium were professionally prescribed.

### C.  Is the Entire Condominium Exempt?

In concluding that only the equipment installed in a van to allow the disabled debtor to use and operate it are exempt, the Hellen court explained, "[a]daptations or modifications made to property do not render that property exempt in its entirety.  The addition of a ramp or elevator to a home, for example, does not make the entire home exempt."  Hellen, 329 B.R. at 685.  The Court rejects the Debtor's argument that the modifications to the Condominium somehow make it totally exempt.  To do so would stretch North Carolina's health aid exemption beyond the intention of the legislature and lead to absurd results.  See id. at 686 (holding that the legislative intent underlying a statutory exemption scheme and health aid exemption similar to North Carolina's was not to allow a debtor to "claim the entire [property] exempt by virtue of the special equipment installed"); see also Kinlaw v. Harris, 689 S.E.2d 428 (N.C. Ct. App. 2009)

(holding that N.C. Gen. Stat. § 1C-1601(a)(9) exempting IRAs also exempts the legal use of funds contained in IRAs, because to hold otherwise "could lead to results . . . not intended by the General Assembly"); AVCO Financial Services v. Isbell, 312 S.E.2d 707, 708 (N.C. Ct. App. 1984) (holding that when strict statutory language yields absurd results, "the reason and purpose of the law shall control . . .") (internal quotations omitted). The Debtor's doctors recommended the improvements to the Condominium, not the purchase of the Condominium itself.

The Trustee presented sufficient evidence to shift the burden of production to the Debtor. The Court has examined the invoices submitted by the Debtor. Although she testified that she spent $14,441.57 to modify the Condominium, she was able to present invoices totaling only $12,939.12. Some of the invoices listed items that the Court finds questionable, such as a rake, door knobs, bottled water, candelabra, and paper towels. In addition, the Court agrees with the Trustee that many of the modifications made by the Debtor might well have been made by any new owner of the Condominium and hence are not directly related to the Debtor's medical condition. Accordingly, consistent with the statutory scheme determined by the North Carolina legislature, the Court holds that only $11,000.00 of the modifications are exempt.

## V. CONCLUSION

For the foregoing reasons, the Court sustains, in part, the Trustee's objection to the Debtor's claim of exemption in the Condominium. The Debtor properly claimed a $18,500.00 homestead exemption in the Condominium. Although there is no dollar limitation expressed in N.C. Gen. Stat. § 1C-1601(a)(7), the Court finds that only those modifications that were necessary to meet the Debtor's medical needs are exempt as professionally prescribed health aids. Since the Court has determined that $11,000.00 of the modifications to the Condominium

were made to minimize the adverse effects of the Debtor's medical condition, an additional $11,000.00 of the value of the Condominium may be exempted. The two exemptions total $29,500.00, so the remaining $6,600.00 of value in the Condominium may not be exempted.

      This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BARBARA RUTH MAN | ) | Case No. 09-51791 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

PARTIES IN INTEREST

Esten H. Goldsmith, Esq.

Edwin H. Ferguson, Jr., Esq.

Michael D. West, Bankruptcy Administrator